2010 Ark. 417

**Damien Wayne ECHOLS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1493.**

Supreme Court of Arkansas.

Nov. 4, 2010.

---

Riordan & Horgan, Little Rock, by: Dennis P. Riordan and Donald M. Horgan, and Deborah R. Sallings, for appellant.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

Laura H. Nirider, Steven A. Drizin, Chicago, IL, and Barbara Bergman, Albuquerque, NM, for amici curiae Center on Wrongful Convictions of Youth and National Association of Criminal Defense Lawyers.

RONALD L. SHEFFIELD, Justice.

Appellant Damien Echols appeals from an order entered on September 10, 2008, denying his motion for new trial, brought under Arkansas Code Annotated sections 16–112–201 to 208 ("the Arkansas DNA testing statutes"). Because Echols was sentenced to death at his original trial in 1994, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2010).

This case has a complicated procedural history and has been before this court on multiple occasions. Therefore, the facts are well established. On May 5, 1993, three eight-year-old boys were reported missing in West Memphis, Arkansas. They were discovered murdered the next day in an area known as the Robin Hood woods. They had sustained extensive injuries, and their bodies were mutilated. Echols, his codefendant Jason Baldwin, and Jessie Misskelley became the subjects of a police investigation. They were eventually charged with the murders on June 3, 1993.

Misskelley was tried separately, and a jury found him guilty of one count of first-degree murder and two counts of second-degree murder. He was sentenced to a combined sentence of life plus forty years' imprisonment, and the convictions were affirmed by this court in *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996). Echols and Baldwin were tried together. The jury found each guilty of three counts of capital murder and sentenced Echols to death and Baldwin to life imprisonment without parole. The convictions and sentences were affirmed in *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996) (*Echols I*).

Echols subsequently petitioned the United States Supreme Court for a writ of certiorari, which was denied on May 27, 1997. *Echols v. Arkansas*, 520 U.S. 1244, 117 S.Ct. 1853, 137 L.Ed.2d 1055 (1997). He then filed a timely petition for postconviction relief pursuant to Arkansas Criminal Procedure Rule 37.5. The trial court denied the petition, and Echols appealed to this court. In *Echols v. State*, 344 Ark. 513, 42 S.W.3d 467 (2001) (*Echols II*), this court affirmed the trial court's refusal to recuse from the postconviction proceeding, but remanded the case for entry of a written order with findings of fact in compliance with Rule 37.5(i). *Id.* Following the court's decision in *Echols II*, the circuit court entered another order, again denying relief under Rule 37.5. While his Rule 37 petition was being considered, Echols filed a petition for writ of error coram nobis in this court. We considered the Rule 37 appeal and the petition for writ of error coram nobis separately but ordered that both cases be submitted and orally argued on the same date. After the oral argument, this court first denied the petition for writ of error coram nobis. *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003) (*Echols III*). The court subsequently affirmed the circuit court's denial of the Rule 37 petition. *Echols v. State*, 354 Ark. 530, 127 S.W.3d 486 (2003) (*Echols IV*). On October 29, 2004, Echols again filed a petition in this court for writ of error coram nobis, which was denied. *Echols v. State*, 360 Ark. 332, 201 S.W.3d 890 (2005) (*Echols V*).

In 2002, while his other petitions for postconviction relief were pending, Echols filed a motion in the circuit court for DNA testing under Arkansas Code Annotated section 16–112–202 (Supp.2001). The circuit court entered a testing order on June 2, 2004, after the parties agreed to the terms of the order. On February 23, 2005, an amended order for DNA testing was

entered.[1] The DNA testing was conducted between December 2005 and September 2007.

The results of the testing established that neither Echols, Baldwin, nor Misskelley was the source of any of the biological material tested, which included a foreign allele from a penile swab of victim Steven Branch; a hair from the ligature used to bind victim Michael Moore; and a hair recovered from a tree stump, near where the bodies were recovered. In addition, the DNA material from the hair found in the ligature used to bind Moore was found to be consistent with Terry Hobbs, Branch's stepfather. The hair found on the tree stump |₄was consistent with the DNA of David Jacoby, a friend of Terry Hobbs.

On April 14, 2008, Echols filed a motion for a new trial pursuant to section 16–112–201 and 208(e)(3).[2] On September 10, 2008, without holding an evidentiary hearing, the circuit court entered an order denying the motion for a new trial. Echols then filed a timely notice of appeal in this court.

On appeal, Echols maintains that the circuit court erred in denying him a new trial or a hearing on his motion for a new trial under the Arkansas DNA testing statutes. He essentially argues that the circuit court (1) erred in its interpretation of the statutes' plain language, and thus applied the wrong legal standards throughout its analysis, (2) should have held an evidentiary hearing under section 16–112–205, and (3) erred in denying his

motion for new trial on the merits. The State disagrees and urges us to affirm on all counts.

## I. The Arkansas DNA Testing Statutes

In 2001, the Arkansas General Assembly approved Act 1780, which was codified as the Arkansas DNA testing statutes. Act of Apr. 19, 2001, No. 1780, 2001 Ark. Acts 7736, codified at Ark.Code Ann. § 16–112–201 to –207 (Supp.2001). According to Act 1780, the General Assembly found that "the mission of the criminal justice system is to punish the guilty and to exonerate the innocent." Id. It further found that "Arkansas laws and procedures should be changed in order to accommodate the advent of new technologies enhancing the ability to analyze new scientific evidence." Id. Following the enactment of Act 1780, |₅Arkansas Code Annotated section 16–112–201 read as follows:

Appeals—New Scientific Evidence.

(a) Except when direct appeal is available, a person convicted of a crime may commence a proceeding to secure relief by filing a petition in the court in which the conviction was entered to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate, if the person claims that:

(1) Scientific evidence not available at trial establishes the petitioner's actual innocence; or

(2) The scientific predicate for the claim could not have been previously

---

1. *Echols III, IV,* and *V* were stayed for periods of time pending the outcome of the DNA testing. *See, e.g., Echols v. State,* 350 Ark. 42, 84 S.W.3d 424 (2002) (per curiam); *Echols v. State,* 353 Ark. 755, 120 S.W.3d 78 (2003) (per curiam). They were ultimately decided

on the merits before the testing was completed.

2. Echols submitted a total of fifty-seven exhibits in support of his motion.

discovered through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would find the petitioner guilty of the underlying offense.

(b) Nothing contained in this subchapter shall prevent the Arkansas Supreme Court or the Arkansas Court of Appeals, upon application by a party, from granting a stay of an appeal to allow an application to the trial court for an evidentiary hearing under this subchapter.

Ark.Code Ann. § 16–112–201 (Supp.2001). Section 16–112–202 allowed a party to make a motion for the performance of fingerprinting, forensic DNA testing, or other tests which may become available through advances in technology to demonstrate the person's actual innocence if "[t]he testing has the scientific potential to produce new noncumulative evidence materially relevant to the defendant's assertion of actual innocence." *Id.* § 16–112–202.

In 2005, the General Assembly approved Act 2250, amending the Arkansas DNA testing statutes. Act of Apr. 13, 2005, No. 2250, 2005 Ark. Acts 9609, codified at Ark. Code Ann. § 16–112–201 to –208 (Repl. 2006). The changes relevant to this appeal are as follows:

- Section 16–112–202, the provision pertaining to motions for DNA testing, was amended to permit testing where "[t]he proposed testing of the specified evidence may produce new material evidence that would ... [r]aise a reasonable probability that the person making a motion under this section did not commit the offense."

- Section 16–112–208 was added to provide the procedures to be followed once the testing was completed.

## II. *Review of the Circuit Court's Order*

The circuit court denied Echols's motion for a new trial on various grounds. Echols contends that the court erred with respect to each of these holdings, and the State disagrees, urging us to affirm on any of the alternative holdings.

According to the State, this court should review the circuit court's order for clear error. The State is correct that we will not reverse a denial of postconviction relief unless the circuit courts's findings are clearly erroneous or clearly against the preponderance of the evidence. *See, e.g., Greene v. State,* 356 Ark. 59, 146 S.W.3d 871 (2004). However, where, as here, there are issues of statutory interpretation, we review the findings de novo. *See, e.g., Singleton v. State,* 2009 Ark. 594, 357 S.W.3d 891. The State maintains that it is not necessary for this court to resolve the parties' disputes as to how the statute should be interpreted. However, the State does not indicate how we can review the circuit court's order without resolving the disputes over statutory interpretation. It is clear that each of the alternative reasons for denying Echols's motion for new trial rests, in part, on the circuit court's interpretation of the DNA testing statutes.

Thus, we adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Greene,* 356 Ark. 59, 146 S.W.3d 871. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and

definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id.* Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Id.*

### A. Section 16–112–208(b)

Prior to the enactment of Act 2250 in 2005, the State and Echols agreed to the testing of DNA found on certain pieces of preserved evidence. Pursuant to the statutory standard at the time, the testing order indicated that "the parties have agreed that biological material found on the below-described evidence has the scientific potential to produce non-cumulative evidence which may be materially relevant to the Defendants'/Petitioners' assertions of actual innocence...." In response to Echols's motion for a new trial, the State argued before the circuit court, and now contends on appeal, that Echols would not have been entitled to testing under the new version of section 16–112–202, and, as such, it would not have consented to the testing under the current standard.'

In denying Echols's motion for a new trial, the circuit court agreed with the State that the new version of section 16–112–202 is "more stringent" and that Echols's motion for a new trial was "founded on testing results that have not been found to meet the strictures of the statute." As a result, the circuit court found that it was required to "resolve how the current relief provisions found in § 16–112–208 operate, particularly here on testing results ordered under the now-repealed testing provision of § 16–112–202."

The circuit court then turned to the language in section 16–112–208(b), codified after the enactment of Act 2250 in 2005. According to section 208(b), "If the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive, the court may order additional testing or deny further relief to the person who requested the testing." Ark.Code Ann. § 16–112–208(b) (Repl.2006). The circuit court reasoned that it "must determine the meaning of inconclusive in this case in light of the testing ordered." In doing so, it found that "[a]ll of the relief available under section 208 is premised on testing ordered consistently with the current version of section 202." The court then adopted the State's argument and denied the motion for a new trial under section 208(b), finding that the DNA test results were "inconclusive because they do not raise a reasonable probability that [Echols] did not commit the offenses; that is, they are inconclusive as to his claim of actual innocence."

We disagree with the circuit court's reasoning on this point. First, there is nothing in Act 2250 to suggest that section 208 should be applied differently to DNA test results ordered under the prior version of section 202. It is axiomatic that we interpret statutes according to their plain language when they are not ambiguous. *See, e.g., Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003). Therefore, we decline to apply the new testing standard, codified at section 16–112–202, to the instant case because the DNA testing was ordered under the previous version of the statute.

In addition, the term "inconclusive" in section 208(b) is not ambiguous. When read with the rest of section 16–112–208, it is evident that it refers to DNA test results that are scientifically inconclusive,

not results that are legally inconclusive. The relevant sections are as follows:

(b) If the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive, the court may order additional testing or deny further relief to the person who requested the testing.

(c)(1) If deoxyribonucleic acid (DNA) test results obtained under this subchapter establish that the person who requested the testing was the source of the deoxyribonucleic acid (DNA) evidence, the court shall deny any relief to the person. . . .

(e)(1) If deoxyribonucleic acid (DNA) test results obtained under this subchapter exclude a person as the source of deoxyribonucleic acid (DNA) evidence, the person may file a motion for a new trial or resentencing.

Ark.Code Ann. § 16–112–208(b), (c)(1), and (e)(1) (Repl.2006). These subsections make clear that there are three possible results from DNA testing: (1) the results are inconclusive as to the source of the DNA evidence; (2) the results establish that the petitioner is the source of the DNA evidence; or (3) the results establish that the petitioner is not the source of the DNA evidence. *Id.* The statute's plain language provides that the court may order additional testing or deny further relief "[i]f the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive." Ark.Code Ann. § 16–112–208(b). In contravention of this straightforward language, the State argues that Echols's test results were inconclusive under section 208(b) because they were "inconclusive as to his claim of actual innocence." However, nothing in section 208(b) requires the test results to be conclusive as to the petitioner's claim of actual innocence.

Furthermore, it is unclear to this court how DNA test results alone could ever produce legally conclusive evidence of innocence under the State's interpretation of the statute. The ⌊10State argues that "without DNA testing results that *could* be dispositive of the identity of the killers here, the appellant cannot raise a reasonable probability that he was not one of them." Despite this statement, the State fails to provide any example of when DNA evidence could be dispositive of the identity of the killers and states in a footnote to its brief that it "believes that the forum the statute provides may well never yield relief due to confidence that the Arkansas criminal-justice system does not convict the innocent." We decline the invitation to interpret the statutes in this way because it would render them meaningless. *See, e.g., State v. Owens,* 370 Ark. 421, 426, 260 S.W.3d 288, 292 (2007) (this court will not interpret a statute to yield an absurd result).

▮ While there is a significant dispute in this case as to the legal effect of the DNA test results, it is undisputed that the results conclusively excluded Echols, Baldwin, and Misskelley as the source of the DNA evidence tested. Thus, we hold that section 16–112–208(b) is inapplicable to the instant matter, and the circuit court erred in denying relief under that subsection.

B.   Section 16–112–208(e)

The circuit court also denied Echols's motion under section 16–112–208(e), which reads as follows:

(e)(1) If deoxyribonucleic acid (DNA) test results obtained under this subchapter exclude a person as the source of the deoxyribonucleic acid (DNA) evidence, the person may file a motion for a new trial or resentencing.

(2) The court shall establish a reasonable schedule for the person to file a motion under subdivision (e)(1) of this section and for the state to respond to the motion.

(3) The court may grant the motion of the person for a new trial or resentencing if the deoxyribonucleic acid (DNA) test results, when considered with all other evidence in the case regardless of whether the evidence was introduced at trial, establish by compelling evidence that a new trial would result in an acquittal.

Ark.Code Ann. § 16–112–208(e) (Repl. 2006). The circuit court's interpretation and application of this subsection was erroneous on each alternative basis.

The circuit court denied relief under section 16–112–208(e) because it was "the Petitioner's burden to show his innocence by DNA testing results, despite all other evidence of guilt, not by reweighing the trial evidence against new forensic evidence or opinions. Those matters simply are not cognizable under the statute." The court went on to find that Echols did not make the requisite showing for a new trial under section 208(e)(3) based on the DNA testing results because "[e]ven accepting those results as unchallenged, they merely exclude him as the source of several pieces of biological material that have differing connections to the crime scene and do not exclude other persons connected to one of the victims." The judge found that the evidence did not, however, foreclose "the possibility that [Echols] nevertheless committed the offenses."

On appeal, Echols contends that the circuit court erred by failing to consider the additional evidence he submitted, in addition to the DNA test results.[3] Echols further argues that it was error to interpret section 208(e)(3) as providing for a new trial only if the DNA test results were legally conclusive of his innocence. The State answers that the circuit court's alternative reason for denying relief was proper because "when considered with all the other evidence of appellant's guilt, his DNA testing results do not establish by compelling evidence that a new trial would result in acquittal."

By accepting the State's argument that the DNA test results, standing alone, had to be considered against "all other evidence of guilt" to determine whether Echols was innocent, the circuit court read additional language into the statute. The statute's plain language makes clear that the circuit court is to consider the DNA test results "with *all other evidence in the case* regardless of whether the evidence was introduced at trial." Ark.Code Ann. § 16–112–208(e)(3) (Repl.2006) (emphasis added).

We likewise reject the State's contention that "all other evidence in the case" means all other evidence of guilt because, according to the State's brief, if the legislature had intended to permit evidence of guilt and evidence of innocence, "it readily could have provided that both incriminating *and* exculpatory evidence could be considered under section 208(e)(3), as the federal standard expressly provides." As already dis-

---

**3.** Echols submitted fifty-seven exhibits to the circuit court in support of his motion for a new trial. The exhibits included, in part, the results of the investigations of multiple forensic specialists, concluding that many of the injuries sustained by the victims were inflict-

ed postmortem as the result of animal predation. Echols also submitted affidavits to the effect that the jury improperly considered Misskelley's confession in convicting him and sentencing him to death.

cussed, the statute's plain language indicates that "all other evidence" is to be considered. Furthermore, the State cites *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), for the proposition that the "federal standard" expressly allows for both incriminating and exculpatory evidence. *House*, however, does not discuss the federal DNA testing statute, 18 U.S.C. § 3600. *Id.* In fact, the federal statute includes the $|_{13}$same language as Arkansas Code Annotated section 16–112–208(e)(3) and refers to "all other evidence in the case." *See* 18 U.S.C. § 3600(g)(2) ("The court shall grant the motion of the applicant for a new trial or resentencing, as appropriate, if the DNA test results, when considered with all other evidence in the case (regardless of whether such evidence was introduced at trial), establish by compelling evidence that a new trial would result in an acquittal . . . .").

We hold that "all other evidence in the case" means any evidence, whether inculpatory or exculpatory, that is relevant to a determination of whether the petitioner has established, by compelling evidence, that a new trial would result in an acquittal. Therefore, the circuit court erred in weighing the DNA test results against all other evidence of guilt. The court should have considered the test results along with the evidence presented by the State of Echols's guilt and that presented by Echols of his innocence.[4]

The circuit court also erred in holding that it was unable to reweigh the trial

evidence against all other relevant evidence. That is precisely what the statute's plain language contemplates. In fact, it is difficult to understand how the circuit court could make a determination about whether the petitioner had met his burden under section 208(e)(3) $|_{14}$without weighing the DNA test results with "all other evidence in the case regardless of whether the evidence was introduced at trial."

Finally, we address the circuit court's finding that Echols was not entitled to a new trial because the DNA test results did not foreclose "the possibility that [he] nevertheless committed the offenses." Section 208(e)(3) does not require Echols to conclusively prove that he did not commit the offense, as the court found and the State argues. Rather, the substantive standard set forth in section 208(e)(3) makes clear that Echols must "establish by compelling evidence that a new trial would result in an acquittal." Ark.Code Ann. § 16–112–208(e)(3) (Repl.2006). In other words, the question is whether a new jury would find Echols guilty beyond a reasonable doubt.

### C. Compelling Claim of Actual Innocence

As a final alternative ruling, the circuit court held that, even if it accepted Echols's argument about the correct standard to be applied to the new-trial motion and credited his proffered evidence, it would nevertheless deny the motion because Echols "fell well short of the strin-

---

**4.** In denying Echols's motion for a new trial, the circuit court refused to consider evidence of juror misconduct during the first trial. The circuit court found that it was prevented by the law-of-the-case doctrine from considering the evidence because the issue had already been decided in prior postconviction proceed-

ings. While it is true that Echols is barred from relitigating any issue as a means of collaterally attacking his judgment, evidence raised in prior postconviction proceedings may or may not be relevant under section 208(e)(3) to a determination of whether a new trial would result in acquittal.

gent showing of a compelling claim of actual innocence." This holding was in error because the court again applied the incorrect legal standard. To reiterate, the substantive standard to be applied in assessing a motion for new trial under section 208(e)(1) is clearly set out in section 208(e)(3). As already discussed, section 208(e)(3) does not require Echols to present a "compelling claim of actual innocence," but states that he must "establish by compelling evidence that a new trial would result in an acquittal."

### D. Right to an Evidentiary Hearing

Finally, we address Echols's argument that the circuit court was required to hold an evidentiary hearing prior to ruling on his motion for a new trial. The State does not address this argument in its briefs, and the circuit court's order merely stated that it denied the petition without a hearing. This was error.

According to section 16–112–205:

(a) Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court *shall* promptly set an early hearing on the petition and response, promptly determine the issues, make findings of fact and conclusions of law, and either deny the petition or enter an order granting the appropriate relief.

*Id.* § 16–112–205(a) (emphasis added). Echols was entitled to an evidentiary hearing under this subsection before the motion for a new trial was ruled upon. This conclusion is further supported by the fact that section 16–112–205(b)(5) permits the court to "receive evidence in the form of affidavit, deposition, or oral testimony." *Id.* § 16–112–205(b)(5). Echols's petition and the files and records of the proceedings do not conclusively show that he is entitled to no relief, and the circuit court was required to hold an evidentiary hearing on the motion for new trial.

### III. *Conclusion*

Because we hold that the circuit court erroneously interpreted the Arkansas DNA testing statutes, we reverse and remand for an evidentiary hearing, at which the circuit court shall hear Echols's motion for a new trial and consider the DNA test results "with all other evidence in the case regardless of whether the evidence was introduced at trial" to determine if Echols has "establish[ed] by compelling evidence that a new trial would result in acquittal." Ark.Code Ann. § 16–112–208(e)(3) (Repl.2006). We hold that, because the circuit court interpreted the statutes in question incorrectly, it applied the wrong legal standards to Echols's motion. Furthermore, the statute requires that the court "promptly set an early hearing on the petition and response" unless "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." *Id.* § 16–112–205(a). Echols's petition and the files and records of the proceeding do not conclusively show he is entitled to no relief, and the circuit court should have held an evidentiary hearing. Therefore, we reverse and remand for an evidentiary hearing and reconsideration of the motion in light of the proper interpretation of the statutes.

Reversed and remanded.

Special Justice JEFF PRIEBE joins.

WILLS, J., not participating.