United States Court of Appeals

For the Eighth Circuit

_____

No. 17-1055
_____

Christopher S. McDaniel,

*Plaintiff - Appellee,*

v.

Anne Precythe,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: November 14, 2017
Filed: July 27, 2018
_____

Before COLLOTON and GRUENDER, Circuit Judges, and HOLMES,[1] District
Judge.
_____

COLLOTON, Circuit Judge.

Christopher McDaniel sued the Director of the Missouri Department of
Corrections, alleging that the Director's procedures for inviting citizens to witness

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

executions violate McDaniel's rights under the Due Process Clause of the Fourteenth Amendment. The Director moved to dismiss McDaniel's claim on the grounds that McDaniel lacks standing and that the Director is immune from suit under the Eleventh Amendment. The district court[2] denied the motion, and the Director appeals. We affirm.

I.

Because this appeal arises from the denial of a motion to dismiss, we accept as true the well-pleaded allegations in the complaint. The following factual account is derived from McDaniel's complaint.

Missouri law requires the Director of the Department of Corrections to invite "at least eight reputable citizens," in addition to the state attorney general, to witness each Missouri execution. Mo. Rev. Stat. § 546.740. The relevant statute provides that "no person under twenty-one years of age shall be allowed to witness the execution," but does not otherwise restrict the Director's discretion. *Id.* The Department of Corrections has no policy governing how the Director decides whom to invite as witnesses, and the selection of witnesses is left to the unfettered discretion of the Director.

Director George Lombardi employed certain procedures in connection with the selection of witnesses. A person who seeks to witness an execution must submit an application form published by the Department. The form requests basic personal information and criminal history, and then asks the applicant to "[e]xplain why you are requesting to be a witness to an execution in the State of Missouri." The form also inquires as follows: "Are you, or have you ever been, a member of any group or

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

organization opposed to, or in support of, the death penalty?" If so, the applicant must "list the names of the organization(s)."

McDaniel is an investigative journalist who formerly reported for St. Louis Public Radio and now works as a death penalty reporter for BuzzFeed News. As part of his work, McDaniel has written several articles criticizing Missouri's execution practices. In January 2014, McDaniel submitted an application to witness a Missouri execution as an employee of St. Louis Public Radio. In response to the form's instruction, McDaniel explained that he was seeking to witness a Missouri execution "[t]o ensure that this solemn task is carried out constitutionally." The Department of Corrections never responded to McDaniel's request, and the Director did not invite McDaniel to witness any of Missouri's seventeen subsequent executions.

In August 2016, McDaniel sued Director Lombardi in his official capacity under 42 U.S.C. § 1983. The complaint alleges that the Director violated the Due Process Clause because his "policies and customs related to the selection of execution witnesses" give the Director "unbridled discretion to deny an adult citizen the benefit of serving as an execution witness based on the individual's viewpoint, expressive or press activity, or membership in a church or other organization." In other words, the complaint alleges that the Director's policies "provide the opportunity for discrimination based on viewpoint or retaliation for First Amendment protected activity." In support of this claim, the complaint alleges that "every applicant who, like [McDaniel], expressed a desire to ensure that execution[s] were carried ou[t] properly and constitutionally was denied the opportunity to witness an execution." The complaint seeks an injunction requiring the Director to establish a policy governing the selection of execution witnesses.

The Director moved to dismiss the complaint, arguing that McDaniel lacked standing to bring his challenge, because he had not suffered an injury in fact. The Director also asserted that he was immune from suit under the Eleventh Amendment.

-3-

The district court denied the motion because it concluded that McDaniel had suffered an injury and that the Director was not immune from a suit for injunctive relief under the rule established in *Ex parte Young*, 209 U.S. 123 (1908).

The Director filed notice of an interlocutory appeal on the question of immunity under the Eleventh Amendment. Anne Precythe then succeeded Lombardi as Director, and she was substituted as the appellant. *See* Fed. R. App. P. 43(c)(2). The Director now reasserts that McDaniel lacks standing and that she is immune from suit under the Eleventh Amendment. In addition, Director Precythe argues that the case is moot because nothing in the record demonstrates that she intends to maintain Director Lombardi's allegedly unconstitutional policies.

## II.

The court of appeals typically has jurisdiction to hear appeals only from final decisions of the district court, *see* 28 U.S.C. § 1291, but we may hear an interlocutory appeal raising a claim of Eleventh Amendment immunity when the district court has rejected an immunity defense raised by a state defendant. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). Our review is limited to the immunity defense and other issues that are "inextricably intertwined" with it. *Entergy, Ark., Inc. v. Nebraska*, 241 F.3d 979, 987 (8th Cir. 2001).

Federal courts, however, must always ensure that a dispute presents a case or controversy under Article III such that an assertion of jurisdiction is proper. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Thus, before we can reach the Director's Eleventh Amendment argument, we must consider whether McDaniel has standing and whether the appeal has become moot. *Calderon v. Ashmus*, 523 U.S. 740, 745 & n.2 (1998). We review the district court's conclusions *de novo*. *Heglund v. Aitkin County*, 871 F.3d 572, 577 (8th Cir. 2017); *Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016).

## A.

Standing is an essential part of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The Director disputes only whether McDaniel has suffered an injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560). The Director argues that McDaniel has no legally protected interest in witnessing an execution because there is no general right to witness an execution.

Although this court has not recognized a right to witness an execution, *see Rice v. Kempker*, 374 F.3d 675, 678 & n.2 (8th Cir. 2004), McDaniel still has a cognizable interest in serving as a witness. McDaniel's work as a journalist has involved extensive review of Missouri's execution protocols. The opportunity to witness a live execution undoubtedly would facilitate McDaniel's work as a death penalty reporter for BuzzFeed News; denying him that opportunity interferes with his ability to maximize his professional well-being. We know that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing," *Defs. of Wildlife*, 504 U.S. at 562-63, and we see no reason why McDaniel's interest in viewing an execution for professional purposes is any less cognizable. This is not to say that he is entitled to witness an execution, but only that he is injured by his inability to do so.

Of course, if an injury is merely speculative or hypothetical, then it is insufficient to satisfy the constitutional minimum. But as McDaniel's challenge is to the legality of the procedures used to select witnesses, he need not allege that he inevitably would be selected to serve as a witness but for the allegedly unlawful policies and customs of the Department. In an equal protection case, for example, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The inability to compete on equal footing is an injury in fact. *Id.*; *see Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). A religious organization likewise satisfies the injury-in-fact requirement when it alleges that the government has excluded the organization from an opportunity for government benefits based on its religious character. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017).

McDaniel's allegations of injury are of a similar nature. He complains that the Director enjoys "unbridled discretion" to select witnesses to executions. He claims that the Director's policies and customs for selecting witnesses allow for discrimination based on viewpoint, retaliation for expressive activity, or exclusion based on membership in a church or other organization. He asserts that the Director requests information about an applicant's association with groups that support or oppose the death penalty. And he alleges that the Director has denied applications from every person who expressed a desire to ensure that executions were carried out constitutionally. These allegations and reasonable inferences made from them support a plausible claim that an applicant's viewpoint is a factor used by the Director when considering whom to invite as a witness. Whether McDaniel's claim has merit—that is, whether the Due Process Clause really prevents the State from retaining unbridled discretion to select execution witnesses or from considering an

applicant's viewpoint—is distinct from whether McDaniel has suffered an injury in fact. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016). McDaniel's allegations that the Director's policies provide an opportunity to exclude McDaniel based on his viewpoint and that the Director has excluded McDaniel and all applicants sharing his particular viewpoint are sufficient to give him standing to press the claim.

B.

The Director contends that even if McDaniel has standing, his claim is moot. To establish a case or controversy, McDaniel must show that there is an ongoing controversy throughout appellate review. *Iowa Prot. & Advocacy Servs. v. Tanager, Inc.*, 427 F.3d 541, 543 (8th Cir. 2005). Director Precythe argues that McDaniel has failed on this point, because he never alleged that she would continue Director Lombardi's policies and customs. The rules of civil procedure recognize that where a successor official "does not intend to pursue the policy of [her] predecessor which gave rise to the lawsuit," the successor may "seek to have the action dismissed as moot." Fed. R. Civ. P. 25(d), advisory committee's note to 1961 amendment.

As the record stands before us, however, there is a continuing controversy. McDaniel complains that the Director has violated the Due Process Clause by applying customs and procedures that permit unbridled discretion to exclude persons from witnessing executions based on viewpoint, expressive activity, or religious affiliation. Director Precythe was appointed after this appeal was docketed, and she has not announced new policies or represented to this court that she will depart from the policies of her predecessor. McDaniel's allegation is not personal to former Director Lombardi, but rather a challenge to the standing policies and customs of the Department. *Cf. Spomer v. Littleton*, 414 U.S. 514, 520-21 (1974). Given that there has been no change to the *status quo* since Director Precythe's appointment, we conclude that the controversy continues. As the case proceeds, however, we trust that

the district court will consider whether evidence shows that Director Precythe will adopt different policies or customs from those of Director Lombardi or "will continue the practices of [her] predecessor." *Mayor of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 622 (1974).

C.

The Director's appeal concerns immunity from suit under the Eleventh Amendment. The Amendment bars a suit brought by a private individual against a State. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997). Under the exception established in *Ex parte Young*, however, a private party may sue state officials in their official capacities for prospective injunctive relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (alteration in original) (quoting *Coeur d'Alene*, 521 U.S. at 296).

McDaniel's complaint alleges that the Director's policies and customs for selecting execution witnesses cause ongoing violations of the Due Process Clause. McDaniel seeks prospective relief—that is, an injunction requiring the Director to cease inviting people to witness executions until she has "established a policy for selection of execution witnesses" that accords with the Due Process Clause. The "straightforward inquiry" set forth by the Supreme Court, therefore, demonstrates that McDaniel's suit is not barred by the Eleventh Amendment.

The Director responds by claiming that *Ex parte Young* is limited to "enforcement actions" by state officials, and that decisions about whom to invite as execution witnesses are outside that category. To be sure, *Ex parte Young* provides that a suit seeking to enjoin enforcement of a state statute may proceed against a state

officer only where the officer has "some connection with the enforcement of the act." 209 U.S. at 157. But this does not mean that a suit may proceed only when it seeks to enjoin an "enforcement action." So long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights, an action to enjoin implementation of the statute or for declaratory relief is available against the state official. There need not be an enforcement proceeding. *See, e.g., Calzone v. Hawley*, 866 F.3d 866, 869-70 (8th Cir. 2017); *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007); *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The Director has authority to implement the Missouri statute on execution witnesses, and she has implemented or is likely to implement the statute. As such, *Ex parte Young* permits McDaniel's suit challenging the constitutionality of the Director's implementation.

Second, the Director argues that the *Ex parte Young* exception does not apply to McDaniel's suit because his claim "implicates Missouri's special sovereign interest in carrying out ministerial actions necessary to implement capital punishment." *Coeur d'Alene* held that the Eleventh Amendment barred an Indian Tribe's suit for prospective relief against state officials where the action implicated the State's "special sovereignty interests" in its land and waters, and was "close to the functional equivalent" of a quiet title suit that was undisputedly barred by the Eleventh Amendment. 521 U.S. at 281-82, 287-88.

McDaniel's effort to require the promulgation of a policy that cabins the Director's discretion to select execution witnesses does not implicate the same sort of "unusual" situation involving "special sovereignty interests." *Id.* at 281. Even if McDaniel succeeds, the relief sought would not interfere with the State's ability to enforce its capital punishment statute or even affect its authority to regulate such matters as the number of reporters present or the permissible behavior of witnesses at executions. Again, we express no view on the merits of McDaniel's claim, but we conclude that a lawsuit seeking injunctive relief to bring the Director's witness-

selection process into compliance with the Constitution falls within the scope of *Ex parte Young* and may proceed in federal court.

\* \* \*

The order of the district court is affirmed. McDaniel's motion to hold the case in abeyance is denied.

_____