# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1922
_____

Stacey Eugene Johnson

*Plaintiff - Appellee*

v.

Tim Griffin,[1] Attorney General, in his official capacity; Erin Hunter, Sevier County Prosecuting Attorney, in her official capacity; Kermit Channell, Director of the Arkansas State Crime Laboratory, in his official capacity

*Defendants - Appellants*

Stacey Pectol, Clerk of the Courts of the Arkansas Supreme Court, in her official capacity

*Defendant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 10, 2023
Filed: June 5, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

---

[1]Tim Griffin has been appointed to serve as the Attorney General of the State of Arkansas, and is substituted as appellant pursuant to Federal Rule of Appellate Procedure 43(c).

KELLY, Circuit Judge.

Stacey Johnson has been incarcerated on death row in Arkansas since 1997. After he was denied relief in state court under Arkansas's postconviction DNA testing statute, Johnson filed this federal lawsuit against several Arkansas officials under 42 U.S.C. § 1983. The defendants moved to dismiss the complaint on both standing and immunity grounds. The district court[2] denied the motion, and the defendants appeal.

I.

In 1993, Carol Heath was found dead in her home in Sevier County, Arkansas. Johnson was charged with her murder, and he was convicted of capital murder and sentenced to death the following year. That conviction was later reversed on appeal because of an evidentiary error. See Johnson v. State (Johnson I), 934 S.W.2d 179, 180 (Ark. 1996). Johnson was re-tried in 1997, and a jury again found him guilty of Heath's murder and sentenced him to death. The Arkansas Supreme Court affirmed Johnson's conviction and death sentence on direct appeal. See Johnson v. State (Johnson II), 27 S.W.3d 405, 408 (Ark. 2000).

Following his second conviction, Johnson unsuccessfully sought postconviction relief in state court. See Johnson v. State (Johnson III), 157 S.W. 151, 158 (Ark. 2004) (ordering retesting of certain DNA evidence); Johnson v. State (Johnson IV), 235 S.W.3d 872, 874–76 (Ark. 2006) (concluding that Johnson III "contained a factual error" and that further DNA testing was not warranted). He then petitioned for a writ of habeas corpus in federal court, which was also unsuccessful. See Johnson v. Norris, 537 F.3d 840, 842–43 (8th Cir. 2008)

_____

[2]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

(affirming the district court's denial of habeas relief), cert. denied, 555 U.S. 1182 (2009).

Arkansas scheduled Johnson's execution for April 20, 2017. Shortly before that date, Johnson filed a petition in state court under Arkansas's postconviction DNA testing statute, which is known as Act 1780.[3] See Ark. Code Ann. §§ 16-112-201 to -208 (Repl. 2016). Johnson sought DNA testing on 26 pieces of physical evidence related to Heath's murder, including swabs taken from Heath's body and Caucasian hairs found at the crime scene that have never been tested. Johnson, who is Black, argued that the proposed DNA testing might collectively point to a specific Caucasian perpetrator and thus raise a reasonable probability that Johnson is innocent.[4] A state trial court denied the petition, but the Arkansas Supreme Court stayed Johnson's execution the day before it was to be carried out and remanded his case for an evidentiary hearing. Johnson v. State, No. CR-17-312, 2017 WL 1455044, at *1 (Ark. Apr. 19, 2017).

On remand, the state trial court again denied Johnson's Act 1780 petition. See Johnson V, 591 S.W.3d at 268–69. And the Arkansas Supreme Court affirmed that decision on appeal. Id. at 266. The court explained that DNA testing is authorized under Act 1780 "only if it can provide materially relevant evidence that will significantly advance the petitioner's claim of innocence in light of all evidence

---

[3]As described by the Arkansas Supreme Court, "Act 1780 provides that a writ of habeas corpus can issue based on new scientific evidence proving the actual innocence of a wrongfully convicted person." Johnson v. State (Johnson V), 591 S.W.3d 265, 269 (Ark. 2019) (citing Ark. Code Ann. § 16-112-201(a)(1)). The Act authorizes postconviction DNA testing "only under specified conditions," however, and "[f]ailure to meet any one condition precludes" such testing "as a matter of law." Id. at 270.

[4]Act 1780 requires that a petitioner show, among other things, that the proposed DNA testing "may produce new material evidence that would" (A) support a theory of defense that "[w]ould establish the [petitioner's] actual innocence" and (B) "[r]aise a reasonable probability that the [petitioner] did not commit the offense." Ark. Code Ann. § 16-112-202(6), (8).

presented to the jury." Id. at 270. It then concluded that "none of the evidence that might result from" Johnson's proposed testing "could advance [his] claim of actual innocence or raise a reasonable probability that he did not murder Carol Heath." Id. at 272.

Johnson filed a petition for rehearing, in which he contended that the denial of his Act 1780 petition "implicate[d] a right to due process and access to the courts under the United States Constitution." Johnson v. State, No. CR-18-700, 2020 WL 830044, at *2 (Ark. Feb. 20, 2020). The Arkansas Supreme Court declined to consider the merits of Johnson's "novel constitutional arguments," and it reaffirmed its denial of Johnson's Act 1780 petition. Id. Johnson petitioned the United States Supreme Court for a writ of certiorari, and that too was denied. See Johnson v. Arkansas, 141 S. Ct. 1370 (2021).

Johnson subsequently brought this § 1983 action in federal court, in which he asserts that Act 1780, as "authoritatively construed" by the Arkansas Supreme Court, violates his federal constitutional rights. Johnson sued the Attorney General of Arkansas, the Sevier County Prosecuting Attorney, and the Director of the Arkansas State Crime Laboratory in their official capacities,[5] alleging in relevant part that the defendants' "continued refusal to allow [him] to test key evidence in their possession denies him due process of law." And he seeks an order declaring Act 1780 unconstitutional and an injunction requiring the defendants "to release" DNA evidence to him "so that [he] can have the evidence tested at his own expense."

The defendants moved to dismiss Johnson's complaint. As relevant to this appeal, they argued that Johnson lacks standing and that they are immune from suit under the Eleventh Amendment. The district court denied the motion in part, concluding that Johnson has standing to challenge Act 1780 on procedural due

---

[5]Johnson also sued the clerk of the Arkansas Supreme Court, but that defendant was dismissed from the case after the district court determined that the clerk was entitled to judicial immunity.

process grounds[6] and that the defendants are not entitled to Eleventh Amendment immunity. The court granted the motion to dismiss all other claims.

The defendants now appeal the district court's rulings on standing and immunity. And we have jurisdiction over their interlocutory appeal under the collateral order doctrine. See McDaniel v. Precythe, 897 F.3d 946, 949 (8th Cir. 2018) ("[W]e may hear an interlocutory appeal raising a claim of Eleventh Amendment immunity when the district court has rejected an immunity defense raised by a state defendant."); Duit Constr. Co. v. Bennett, 796 F.3d 938, 940–41 (8th Cir. 2015) (addressing a plaintiff's standing to bring suit as part of an interlocutory appeal of a district court's denial of Eleventh Amendment immunity).

II.

The merits of Johnson's challenge to Act 1780 are not before us. Our review is instead limited to the threshold issues of whether Johnson has standing and whether the defendants are immune from suit under the Eleventh Amendment, two questions we review de novo. See Heglund v. Aitkin County, 871 F.3d 572, 577 (8th Cir. 2017) ("We review standing *de novo*."); Balogh v. Lombardi, 816 F.3d 536, 544 (8th Cir. 2016) ("We review district court determinations of Eleventh Amendment immunity de novo.").

A.

We start with standing. See McDaniel, 897 F.3d at 949–50. "The Constitution limits federal courts to deciding 'Cases' and 'Controversies,'" and that limitation, "[a]mong other things, . . . requires a plaintiff to have standing." Fed. Election Comm'n v. Cruz, 142 S. Ct. 1638, 1646 (2022) (quoting U.S. Const. art. III,

---

[6]Johnson alleges in relevant part that "the decisions of Arkansas courts . . . reveal consistently unreasonable and incorrect interpretations of Act 1780, such that virtually no litigant can meet the Act's requirements, thereby depriving litigants of their procedural due process rights."

§ 2). To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." McDaniel, 897 F.3d at 950 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). The plaintiff has the burden of establishing these elements. Agred Found. v. U.S. Army Corps of Eng'rs, 3 F.4th 1069, 1073 (8th Cir. 2021). To survive a motion to dismiss, a plaintiff need only "allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing." Hawse v. Page, 7 F.4th 685, 688–89 (8th Cir. 2021). And this pleading burden is "relatively modest." Bennett v. Spear, 520 U.S. 154, 171 (1997).

Relevant to our analysis here are two Supreme Court cases that directly addressed the same type of constitutional claim that Johnson brings in this case. In District Attorney's Office for the Third Judicial District v. Osborne, the Court explained that if state law authorizes prisoners to demonstrate their innocence by way of postconviction DNA testing, that state-created liberty interest is subject to the Due Process Clause's procedural protections. 557 U.S. 52, 67–68 (2009); see id. at 69 ("Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided."). And in Skinner v. Switzer, the Court held that a procedural due process challenge to a state's postconviction DNA testing statute "is properly pursued in a § 1983 action." 562 U.S. 521, 525 (2011). Like the defendants in both of those cases, Johnson sought to establish his innocence through a state postconviction DNA testing statute—here, Arkansas's Act 1780. He alleges that Arkansas courts have arbitrarily denied him "the very right" to DNA testing that Act 1780 "purports to create." See Osborne, 557 U.S. at 72 (indicating that a prisoner can assert as part of a procedural due process claim that certain postconviction procedures provided by state law were "arbitrarily denied to him"). And he seeks relief by bringing a § 1983 action challenging Act 1780's constitutionality on procedural due process grounds. See Skinner, 562 U.S. at 530 ("[The defendant] challenges, as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts.").

In neither <u>Osborne</u> nor <u>Skinner</u> did the Supreme Court question the prisoner's standing to bring the procedural due process claims at issue in those cases. And in the years since, a § 1983 action against a state prosecuting authority has become the principal means by which prisoners can challenge the constitutionality of state postconviction DNA testing statutes. See, e.g., <u>Reed v. Goertz</u>, 143 S. Ct. 955, 960 (2023) (involving a procedural due process challenge to Texas's postconviction DNA testing statute brought against a state prosecutor); <u>Morrison v. Peterson</u>, 809 F.3d 1059, 1064 (9th Cir. 2015) (involving a similar challenge brought against a district attorney); <u>Alvarez v. Att'y Gen. for Fla.</u>, 679 F.3d 1257, 1258 (11th Cir. 2012) (involving a similar challenge brought against the Attorney General of Florida and a state prosecutor); see also <u>LaMar v. Ebert</u>, 681 F. App'x 279, 286 (4th Cir. 2017) (per curiam) (unpublished) (observing that "no court—including the Supreme Court—has either identified or assessed a standing issue when the convicted person has sued a prosecutor for denial of access to post-conviction DNA testing").

The defendants here nonetheless argue that Johnson lacks standing because they "have no connection" to the Arkansas judiciary's enforcement of Act 1780 and, as a result, have not caused Johnson any redressable injury. They further argue that <u>Osborne</u> and <u>Skinner</u> "never addressed what state officials, if any, are proper Article III defendants." But any lingering doubt about a prisoner's standing to bring the distinct procedural due process claim recognized in those two cases was dispelled by the Supreme Court's recent decision in <u>Reed v. Goertz</u>, 143 S. Ct. 955 (2023).

In <u>Reed</u>, a prisoner on death row brought a § 1983 action asserting that Texas's postconviction DNA testing law "failed to provide procedural due process," and the named defendant was the state prosecutor who had opposed the prisoner's state-court motion for DNA testing. 143 S. Ct. at 960. The Supreme Court ultimately decided when the statute of limitations for such claims begins to run. <u>Id.</u> at 959 (holding that the statute of limitations begins to run "at the end of the state-court litigation"). But before reaching that result, the Court rejected Texas's threshold argument that the prisoner lacked standing. See <u>id.</u> at 960.

-7-

Reed establishes that Johnson has standing to bring his procedural due process claim against the Sevier County Prosecuting Attorney. First, like the prisoner in Reed, Johnson has "sufficiently alleged an injury in fact"—namely, "denial of access to" the DNA evidence he wishes to test pursuant to Act 1780. Id. Second, Johnson alleges that the Sevier County Prosecuting Attorney has possession and control of that evidence yet, like the state prosecutor in Reed, continues to "den[y] access to" it, "thereby caus[ing]" Johnson's injury. Id. And third, Johnson's injury is redressable because, as explained in Reed, "if a federal court concludes that [Arkansas's] post-conviction DNA testing procedures violate due process, that court order would eliminate" the Prosecuting Attorney's "justification for denying DNA testing." Id.; see id. (noting that such a court order would significantly increase the likelihood that the state prosecutor "would grant access to the requested evidence" and that the prisoner "therefore would obtain relief that directly redresses the injury suffered" (cleaned up)).

Reed specifically addressed a § 1983 action brought against a state prosecutor. But Johnson also has standing to bring his procedural due process claim against the Arkansas Attorney General and the Director of the State Crime Lab. While Johnson does not expressly allege that the Attorney General currently possesses any of the DNA evidence he wants to test, Act 1780 provides the Attorney General an opportunity to play a critical role in the statute's implementation. See Ark. Code Ann. § 16-112-204(a) ("Within twenty (20) days after the filing of the petition, the prosecuting attorney or *the Attorney General* shall respond to the petition by answer or motion . . . ." (emphasis added)). And here, the Attorney General responded to Johnson's Act 1780 petition by opposing it in state court.[7] Cf. Echols v. State, 373 S.W.3d 892, 898 (Ark. 2010) (indicating that the State and an Act 1780 petitioner can agree to DNA testing under the statute); id. at 895 ("The circuit court entered a [DNA] testing order . . . after the parties agreed to the terms of the order."). The

---

[7]The Attorney General argued on behalf of the State in Johnson V and contended that Johnson's Act 1780 petition should be denied because Johnson had failed to meet the statutory prerequisites for postconviction DNA testing.

Attorney General "thereby caused," in part, Johnson's ongoing injury of being denied access to DNA testing that might prove his innocence. Reed, 143 S. Ct. at 960; see Bennett, 520 U.S. at 168–69 (explaining that the traceability requirement does not require that the defendant's actions be "the very last step in the chain of causation").

As for the Director of the State Crime Lab, Johnson alleges that the Director has "possession" and "control" of evidence he would like to test. He further claims that the Director and the other defendants are "refus[ing] to allow" him "to test key evidence in their possession." And these allegations—which we must accept as true at this stage of litigation, see Hawse, 7 F.4th at 688–89—are sufficient to meet Johnson's "relatively modest" burden of establishing standing. Bennett, 520 U.S. at 171.

In sum, Johnson has sufficiently alleged an injury in fact that was caused by the defendants and that would be redressed by the relief he seeks in his § 1983 action. He has standing to bring his procedural due process challenge to Act 1780.

B.

The defendants also argue that the district court erred in determining that they are not immune from suit under the Eleventh Amendment. The Eleventh Amendment "protects States and their arms and instrumentalities from suit in federal court." Webb v. City of Maplewood, 889 F.3d 483, 485 (8th Cir. 2018). Yet under the exception to Eleventh Amendment immunity established in Ex parte Young, 209 U.S. 123 (1908), "a private party may sue state officials in their official capacities for prospective injunctive relief." McDaniel, 897 F.3d at 951–52. This exception applies only if the state officials being sued have "some connection to the enforcement of the challenged laws." Calzone v. Hawley, 866 F.3d 866, 869 (8th Cir. 2017). Such a connection exists "[s]o long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his

constitutional rights," <u>McDaniel</u>, 897 F.3d at 952, which is an inquiry similar to the standing one.  <u>See</u> <u>Duit Constr. Co.</u>, 796 F.3d at 940.

The defendants here are not immune from suit under the Eleventh Amendment because Johnson seeks prospective declaratory and injunctive relief and has alleged a sufficient connection between the defendants and Act 1780's enforcement.  The Sevier County Prosecuting Attorney and the Director of the State Crime Lab have a sufficient connection because they possess and control evidence that Johnson seeks to test, and they have refused to provide it to him.  <u>See</u> <u>Reed</u>, 143 S. Ct. at 960 (concluding summarily that the "<u>Ex parte Young</u> doctrine" applies in similar circumstances).  And the Attorney General has a sufficient connection because he has refused to agree to DNA testing and opposed Johnson's Act 1780 petition.  <u>See</u> Ark. Code Ann. § 16-112-204(a); <u>Echols</u>, 373 S.W.3d at 895, 898.

## III.

The order of the district court is affirmed.

STRAS, Circuit Judge, concurring.

Based on the Supreme Court's decision in *Reed v. Goertz*, 143 S. Ct. 955 (2023), which is indistinguishable from this case, I concur.  Although the Supreme Court did not say much, what it did tell us resolves everything we have to decide here.

_____