Albert PAULL, Plaintiff–Respondent,

and

Richard Paull, Plaintiff–Respondent,

v.

Melvin PAULL and Theodore Paull, Defendants–Appellants,

and

Fair Mercantile Company, Fair–Paull Investment Company, and Mercantile Acceptance Corporation, Defendants–Appellants.

Nos. 59249, 59250.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 29, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1991.

John P. Emde, Wilbur L. Tomlinson, St. Louis, Carl Michael Bakewell, Bernard Barken, Clayton, for defendants-appellants.

Carroll J. Donohue, St. Louis, for plaintiffs-respondents.

Albert Paull, pro se.

STEPHAN, Judge.

These two appeals stem from a series of orders the trial court entered on May 23, 1990, September 25, 1990, September 27, 1990, and October 18, 1990, wherein the trial court enforced a settlement agreement entered into among three corporations and four stockholders in said corporations. Two stockholders and the three corporations currently challenge the terms of the enforcement orders. We remand.

At the outset, an explanation of the host of characters in this almost ten year controversy is necessary. Albert Paull ("Albert") and his son, Richard Paull ("Richard"), are the plaintiffs/respondents. At the time of trial, they were represented by Carroll J. Donohue and Husch, Eppenberger, Donohue, Cornfeld and Jenkins. Richard, plus Albert's other children (Jeffrey, Lawrence, Wayne and Deborah) are still currently represented by Mr. Donohue.[1] However, Albert, a member of the Missouri Bar, is now representing himself.

---

1. We note that the trial court considered all of Albert's children (Richard, Jeffrey, Lawrence, Wayne and Deborah) plaintiffs since they eventually signed Richard's Motion to Enforce Set- tlement. Strictly speaking, Jeffrey, Lawrence, Wayne and Deborah were never parties to these lawsuits.

Melvin Paull ("Melvin"), Theodore Paull ("Theodore"), Fair Mercantile Company, Fair–Paull Investment Company and Mercantile Acceptance Corporation ("the three corporate defendants") are the defendants/appellants. Melvin and Theodore were represented at trial, and are still represented by: John P. Emde, Wilbur L. Tomlinson, and Armstrong, Teasdale, Schlafly, Davis & Dicus. The three corporate defendants were represented at trial, and are still represented by: Bernard Barken, C. Michael Bakewell, and Barken and Bakewell.

Albert, Melvin, and Theodore are all brothers. They, and their immediate families, are, most likely, the only stockholders of the three corporate defendants.

On August 31, 1982,[2] Albert and Richard instituted suit against Melvin, Theodore and the three corporate defendants. On January 23, 1989, Albert and Richard filed their second amended petition which contained eight counts. In this petition, Albert and Richard sought: (1) liquidation of the three defendant corporations; (2) an accounting; (3) injunctive relief barring: (a) acts of oppression; (b) misappropriation of both monies and assets; and (c) mismanagement; (4) attorney's fees and costs; (5) statutory damages based on Melvin's and Theodore's refusal to permit Albert, Richard and the other stockholders to inspect corporate records; (6) orders compelling the three corporate defendants to pay dividends; (7) damages against Fair Mercantile Company based upon an alleged employment agreement between Albert, Melvin and Theodore specifying that the three corporate defendants would similarly benefit and compensate the three brothers; (8) damages against Melvin and Theodore based upon malicious interference with the contractual relationship between: Albert, Richard and the three corporate defendants; (9) damages against Mercantile Acceptance Corporation for breach of an alleged employment contract; (10) damages against Melvin and Theodore based upon alleged malicious interference with Richard's contractual employment relationship with Mercantile Acceptance Corporation; and (11) punitive damages against Melvin, Theodore and the three corporate defendants for their alleged malicious conduct. Melvin, Theodore and the three corporate defendants denied all allegations.

The cause was set for trial on July 17, 1989, before the Honorable Richard Mehan. Before receiving any evidence, Judge Mehan stated in the presence of counsel and the parties that: (1) the dispute was a family matter; (2) its judicial resolution would be long and costly; and (3) the parties should endeavor to settle. The parties' respective counsel negotiated throughout the day on July 17, 1990. However, they were unable to reach a settlement. The parties and their respective attorneys returned to the courtroom on July 18, 1989. Mr. Emde indicated that he had a new approach whereby Albert's family could choose either to buy all of Melvin's and Theodore's shares for $1.7 million each or Albert's family could sell their shares for $1.7 million. Since none of the families had sufficient assets to buy the shares, the parties agreed that the three corporate defendants' funds would be used to pay for the shares. The proposal provided that the exercise of the option would entail the settlement of the case and a disposition of all matters between the families.

Eventually, all parties agreed that Albert's family would deliver all of its stock in the three defendant corporations to Melvin and Theodore, who would thereafter pay Albert's family $1,718,500, and the case would be dismissed with prejudice and costs would be against Melvin and Theodore except that each party would pay their associated deposition costs. The parties, by their respective attorneys, filed a courtroom memo which the trial court approved. It stated: "Cause passed for settlement, subject to approval of shareholders of defendant corporations, not in Court this

---

**2.** We note that both: (1) Melvin and Theodore; and (2) the three corporate defendants, refer to this date as *August 30, 1981,* citing *page 46* of their legal file. We are unable to find this date on page 46. Rather, we find that Albert and Richard filed the petition on the date stated in the text of our opinion.

day." · Judge Mehan specifically called counsels' attention to the fact that settlement agreements are enforceable. All parties indicated that they understood.

On July 21, 1989, Albert wrote a letter to Mr. Donohue which implied that he regarded the settlement as being only a sale of stock. After discussing Albert's letter with him, Mr. Donohue felt the matter was resolved, on the basis previously agreed upon.

On September 14, 1989, Mr. Donohue met with Albert, Richard, Jeffrey and Lawrence. Albert again asserted that the settlement was only a sale of stock. Thereafter, Albert wrote a letter or letters to Judge Mehan challenging the settlement. Judge Mehan set a conference for October 10, 1989, although he urged the parties to resolve the matter.

There is some disagreement about the result, if any, reached in the October 10, 1989 conference. Mr. Donohue believed that Albert had again agreed to the settlement. Mr. Emde felt that given some time the settlement could be worked out.

In early December, 1989, Mr. Donohue prepared a draft of the settlement agreement which he sent to Albert. However, Albert refused to proceed with it.

In a letter dated December 5, 1989, from Albert to Judge Mehan, Albert again reiterated that the settlement was only an agreement to sell stock and did not contain a provision that his family would sell their stock with prejudice.

On January 2, 1990, Albert advised the trial court that he dismissed Mr. Donohue and was seeking new counsel.

On February 2, 1990, Melvin and Theodore filed a "Motion to Enforce Settlement". Eleven days later, Albert filed a "Motion For Disqualification and For Other Relief" asking the trial court to disqualify Armstrong, Teasdale from representing Melvin and Theodore.

On February 15, 1990, Mr. Donohue filed a "Response Of Plaintiff Richard Paull and Related Shareholders To Defendant's Motion To Compel Settlement, and Motion of Plaintiff Richard Paull and Related Shareholders To Compel Settlement". In this motion, Mr. Donohue alleged that Melvin's and Theodore's counsel had agreed in September, 1989, that interest would be paid on the $1,718,500 from July 18, 1989.

On March 5, 1990, Albert filed a "Reply To Movant By Respondent, Albert Paull to Defendants' Motion To Compel Settlement, And Motion of Plaintiff Richard Paull and Related Shareholders To Compel Settlement". Again, Albert reiterated that there was not an agreement to sell his stock with prejudice.

On March 9, 1990, Mr. Donohue withdrew as Albert's counsel. Mr. Donohue, however, remained as counsel for Richard and his siblings. At that time, Judge Mehan remanded the matter to Judge Chancellor.

On March 13, 1990, Albert filed a "(1) Motion for Discovery—(2) Motion to Distribute Excess Surplus—(3) Motion to Disqualify Mr. Bernard Barken, Esq. As Company Attorney—(4) Motion To Return This Cause of Action Back To the Court Docket For Trial—(5) Motion For Other Relief Including Mr. Donohue, et al. and Mr. Tomlinson, et al., Motions on File".

On April 20, 1990, the trial court held its first hearing. The court denied Albert's motion to disqualify Armstrong, Teasdale. Subsequently, on April 26, 1990, Albert filed a "Motion for Disqualification [regarding Mr. Barken] (2) Motion To Use The Good Office Of This Court To Issue A Warning That Any False Arrest, Bodily Harm, Or Any Other Illegal Conduct To Any Shareholder Or Legally Elected Director Or Officer Will Not Be Tolerated On Company Premises (3) And For Other Relief". Two days later, Albert filed a "Motion To Amend Judgment Trial By Court—Rule No. 73.01". In this motion, Albert again sought to disqualify the firm of Armstrong, Teasdale.

On May 5, 1990, Judge Chancellor held a hearing on the motions to enforce settlement. At that time, all parties agreed that the issues of interest and attorney's fees would be deferred to a later date. All of the defendants and one of the plaintiffs,

Richard, agreed that a settlement had been reached on July 18, 1989. The only party who did not agree that a settlement had been reached was Albert, who again contended that there was only an agreement to sell stock. Despite Albert's contention, two of Albert's children, Richard and Jeffrey, testified that Albert understood that the agreement included a provision that said transaction would constitute a total settlement and disposition of all claims that any of the parties had against each other. In closing, the trial court orally stated that based on the evidence before it, it believed that all of the plaintiffs understood that on July 18, 1989 a settlement had been reached. The trial court, however, did not enter a final order.

On May 18, 1990, the trial court denied Albert's: (1) Motion To Amend Judgment Under Rule 73.01; and (2) Motion For Disqualification, Motion To Issue A Warning And For Other Relief. On May 23, 1990, the trial court entered its first order which states in pertinent part:

> After hearing, the Court finds that the parties did in fact agree to a settlement on July 18, 1989, wherein plaintiffs agreed to surrender all shares which they hold in the defendant corporations in exchange for one million seven hundred eighteen thousand five hundred dollars ($1,718,500). It was further agreed that the cause would be dismissed with prejudice by all plaintiffs and that the costs were to be taxed against the defendant with the exception that the parties would pay the cost of their own depositions. In addition to depositing his own share of stock, plaintiff, Albert Paull, is to endorse the shares of Jacqueline Paull, deceased, and attach therewith letters of refusal or other evidence of the probate or non-probate of the estate of Jacqueline Paull, deceased.

The order also provided that Albert and all of his children were to deposit their shares with Boatmen's National Bank within seven days of the order date. Additionally, the order provided that the three corporate defendants were to deposit $1,718,500 with Boatmen's National Bank within seven days of the deposit of the shares. Mr.

Donohue subsequently delivered a letter, dated May 25, 1990, to Boatmen's, transmitting stock certificates to Boatmen's. On May 31, 1990, Albert filed his first notice of appeal. On June 1, 1990, Melvin and Theodore filed a report with the trial court wherein the defendants argued that the plaintiffs had not fully complied with the trial court's order in that: (1) no letters of refusal or other evidence of the probate or non-probate of the estate of Jacqueline Paull were deposited with her shares; and (2) some of Albert's children's stock was purported to be held in trust, but no trust instruments were deposited that indicated whether the stock could be conveyed and, if so, under what conditions. On June 6, 1990, Melvin and Theodore filed a "Motion For Amendment of Judgment and Order of Court", asking the court to: (1) order Albert and Richard to dismiss their claims and causes of action with prejudice; (2) order that the $1,718,500 be held in escrow until final resolution of the case; and (3) tax all costs incurred after July 18, 1989 to Albert.

The next day, the three corporate defendants similarly filed a "Motion to Amend Order and Judgment". They: (1) questioned the sufficiency of evidence regarding various parties' right to transfer corporate shares; (2) asked the trial court to hold the funds in escrow until final resolution of the case; and (3) asked the court to order the cause be dismissed with prejudice.

On June 12, 1990, Albert filed his motion to amend asking the court to alter its order so that it would only reflect an agreement to sell stock. Two weeks later, Albert filed a supplement and amendment to his second amended petition, despite the May 23, 1990 order.

On September 25, 1990, the trial court held another hearing. It overruled all of Albert's motions filed since its May 23rd order and granted defendants' motion to amend. The trial court thereafter ordered the defendants to pay interest on the settlement from July 18, 1990. Finally, it denied Melvin's and Theodore's request for attorney's fees.

On September 27, 1990, the trial court amended its September 25, 1990 order so that defendants would be ordered to pay interest from July 18, 1989. On October 18, 1990, the trial court entered yet another order. In this order, the court stated:

> The court has been apprised that all shares of stock of plaintiffs and related shareholders have been heretofore deposited with Boatmen's National Bank properly endorsed or accompanied by other evidence of the right to transfer such shares to the respective defendant corporations.

The order then provided that defendants *Melvin and Theodore* had three days to deposit $1,718,500, plus 9% interest, from and after July 18, 1989, with Boatmen's. Additionally, the order provided for the distribution of the proceeds of the escrow fund. However, the trial court ordered actual distribution to be held until the time for appeal had passed or final judgment had been entered by an appellate court. Finally, the order provided for dismissal of the action upon delivery of the purchase price and interest to the escrow agent.

On October 27, 1990, all defendants filed a motion to: (1) suspend portions of the October 18, 1990 order pending appeal, or, in the alternative, to stay execution of said order pending appeal; and (2) amend, alter and modify the October 18, 1990 order. Defendants requested that: (1) they be allowed to post a bond in lieu of the $1,718,500 plus interest; and (2) the action be dismissed with prejudice. Subsequently, on November 5, 1990, all defendants filed their notices of appeal.

On November 16, 1990, the trial court granted in part and denied in part the defendants' motions. The court indicated that it would set a bond with respect to the interest portion of the court's order, and, upon posting the same, would stay the portion of the court's order directing the deposit of interest in an escrow account. The court, however, ordered the defendants to deposit $1,718,500 with the escrow agent.

That same day, our court granted the defendants' application for leave to file a supersedeas bond. We set the bond at $2,200,000 and remanded the cause to the trial court to determine the form and sufficiency of the bond.

On November 26, 1990, Albert filed his second notice of appeal. Subsequently, on December 21, 1990, the trial court held a hearing regarding the sufficiency of the supersedeas bond. After resolving some issues, defendants posted the bond.

On March 19, 1991, we dismissed Albert's appeal. Thus, the appeals currently before this court are those of Melvin, Theodore, and the three corporate defendants.

In this court-tried case, we affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). At the outset, we address the sufficiency of the parties' briefs. Rule 84.04(c) provides: "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination *without argument.*" (Emphasis ours). Albert's statement of facts presents neither a fair nor concise statement; it is highly argumentative. Rule 84.04(d) provides: "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder.... Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not in compliance with this Rule." Richard's first point neither states what actions or rulings of the court are sought to be reviewed nor wherein and why they are claimed to be erroneous. Rather, Richard's point is a recitation of the standard of review announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). None of the points relied on in Albert's brief state what actions or rulings of the court are sought to be reviewed or wherein and why they are claimed to be erroneous. Each point is an abstract statement of the law without showing how it is related to any action or ruling of the trial

court. Rule 84.04(e) provides: "The argument shall substantially follow the order of 'Points Relied On'." Albert's argument section does not even tangentially follow his points relied on. Rule 84.04(h) provides: "All statements of fact and argument shall have specific page references to the legal file or the transcript." Albert's statement of facts fails to have any page references to the legal file or the transcript. His argument has only one reference to a transcript. These violations of the Rules are not condoned.

This court recognizes its duty pursuant to Rule 84.14 to dispose finally of a case before it on appeal. However, the ironclad tone of this duty is tempered by the fact that final disposition presupposes a record and evidence upon which we can rule with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion. *Lappe and Associates, Inc. v. Palmen*, 811 S.W.2d 468, 471 (Mo.App. 1991). Based on the evidence before us, we are unable to reach any conclusion that would dispose of this case, let alone one that is reasonable, fair and accurate. Our main impediment is the brevity of the trial court's October 18, 1990 order. In this order, the trial court states: "The court has been apprised that all shares of stock of plaintiffs and related shareholders have been heretofore deposited with Boatmen's National Bank properly endorsed or accompanied by other evidence of the right to transfer such shares to the respective defendant corporations." The summary nature of this statement fails to shed any light on two main issues: (1) what material or materials Albert attached to Jacqueline's shares to evidence the probate or non-probate of Jacqueline's estate; and (2) what material or materials Albert's and Jacqueline's children, Wayne and Deborah, attached to their shares to evidence the transferability of their shares, which were held in trust.

We are inclined to believe that the trial court made its decision regarding Jacqueline's shares based on two documents: (1) a waiver signed by all of Albert's and Jacqueline's children releasing, relinquishing and waiving any interest of any nature or description in any of Jacqueline's shares of stock; and (2) a letter from Mr. Donohue to Boatmen's Trust Company in which Mr. Donohue summarily states that Jacqueline's shares are to be treated as Albert's shares. If our assumption is correct, then the trial court erred for this evidence is wholly insufficient as it does not indicate that Jacqueline did not bequeath her shares to a party or parties other than her husband or children thus precluding any right Albert may have to transfer Jacqueline's shares.

With regard to the issue of Wayne's and Deborah's shares of stock, there is no evidence of a trust agreement before us. Melvin and Theodore argue that Albert has indicated, though they have not seen, instruments that would indicate the transferability of Wayne's and Deborah's shares. We are unable to conclude whether any such instrument was properly presented to the trial court.

Rule 81.12(a) provides that the record on appeal "... shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented...." It is appellant's duty to provide a record which contains all the evidence necessary for a determination of the questions presented to the appellate court for a decision. *Cain v. Richart*, 781 S.W.2d 265, 266 (Mo.App.1989). While we recognize appellant's duty, we are unable to discern whether the above shortcomings result from the appellants' failure to present everything the trial court had before it, or, whether the above shortcomings result from a trial court decision based on inadequate evidence. In an abundance of caution, we remand this case to the trial court. The trial court may then either: (1) supplement the October 18, 1990 order indicating how it knew that each parties' stock was freely transferable; or (2) call for a new hearing in which evidence can be presented regarding these issues.

The remaining points in the appellants' brief raise issues regarding whether the trial court should have ordered the defendants to pay interest and, if so, from what

point. The parties also raise issues regarding the inconsistencies in the trial court's orders in that in the trial court's May 23, 1990 order the trial court ordered the defendant corporations to pay the $1,718,500, however, in its October 18, 1990 order it ordered Melvin and Theodore to pay said sum. Finally, the appellants challenge the trial court's distribution of the proceeds of the settlement. It is premature to address these issues for if the trial court determines that a party or parties cannot transfer their shares, the settlement may be affected.

REINHARD, P.J., and AHRENS, J., concur.