Cite as 2024 Ark. 61
# SUPREME COURT OF ARKANSAS
No. CR–22–670

| | | |
|---|---|---|
| | | **Opinion Delivered**: April 18, 2024 |
| DAMIEN ECHOLS | | |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT |
| V. | | [NO. 18CR-93-516] |
| STATE OF ARKANSAS | | HONORABLE TONYA ALEXANDER, |
| | APPELLEE | JUDGE |
| | | REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

Appellant, Damien Echols, appeals from an order entered by the Crittenden County Circuit Court denying his Act 1780 petition for a lack of jurisdiction on the basis that Echols was not in State custody. Echols presents two points on appeal: (1) the circuit court erred by misinterpreting the plain and unambiguous language of Act 1780, which identifies who is jurisdictionally entitled to make a motion for relief under that Act; or (2) alternatively, assuming arguendo that the operative language of Act 1780 is ambiguous, the circuit court erred in failing to apply established principles of statutory interpretation to accurately determine the meaning of that language. We reverse and remand.

I. *Facts and Procedural History*

The appeal before us stems from Echols's pursuit of exoneration. Echols has been before this court in connection with the "West Memphis Three" case on numerous occasions.[1] In

---

[1]*See Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *Echols v. State*, 344 Ark. 513, 42 S.W.3d 467 (2001); *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003); *Echols v. State*,

1993, three eight-year-old boys were found murdered in West Memphis. *See Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996). Echols, Jason Baldwin, and Jessie Misskelley were ultimately convicted of the murders, and Echols was sentenced to death. *Id*. In Echols's preceding appeal, we explained that

> In 2002, while his other petitions for postconviction relief were pending, Echols filed a motion in the circuit court for DNA testing under Arkansas Code Annotated section 16–112–202 (Supp. 2001). The circuit court entered a testing order on June 2, 2004, after the parties agreed to the terms of the order. On February 23, 2005, an amended order for DNA testing was entered. The DNA testing was conducted between December 2005 and September 2007.
>
> The results of the testing established that neither Echols, Baldwin, nor Misskelley was the source of any of the biological material tested, which included a foreign allele from a penile swab of victim Steven Branch; a hair from the ligature used to bind victim Michael Moore; and a hair recovered from a tree stump, near where the bodies were recovered. In addition, the DNA material from the hair found in the ligature used to bind Moore was found to be consistent with Terry Hobbs, Branch's stepfather. The hair found on the tree stump was consistent with the DNA of David Jacoby, a friend of Terry Hobbs.
>
> On April 14, 2008, Echols filed a motion for a new trial pursuant to section 16-112-201 and 208(e)(3). On September 10, 2008, without holding an evidentiary hearing, the circuit court entered an order denying the motion for a new trial. Echols then filed a timely notice of appeal in this court.

*Echols v. State*, 2010 Ark. 417, at 3–4, 373 S.W.3d 892, 895–96 (footnote omitted).

We reversed and remanded for an evidentiary hearing, holding that the circuit court had erroneously interpreted Arkansas Code Annotated sections 16-112-201 through -208 and ordered the circuit court to reconsider Echols's motion for a new trial in light of the proper interpretation of the statutes. *Id*. at 15–16, 373 S.W.3d at 902. After the case was remanded, a resolution was negotiated between the State, Echols, Baldwin, and Misskelley, pursuant to

354 Ark. 530, 127 S.W.3d 486 (2003); *Echols v. State*, 360 Ark. 332, 201 S.W.3d 890 (2006); and *Echols v. State*, 2010 Ark. 417, 373 S.W.3d 892.

2

which Echols and the other defendants would enter a plea in accordance with *North Carolina v. Alford*, 400 U.S. 25 (1970). On August 19, 2011, Echols entered an *Alford* plea and was released from prison, receiving a time-served sentence plus an additional ten years' suspended imposition of sentence. In accordance with the *Alford* plea, Echols continued to maintain his innocence.

Beginning in 2020, Echols engaged in communications with then-prosecutor Scott Ellington regarding the prospect of performing additional DNA testing of certain evidence using the M-Vac® wet-vacuum-based collection method ("M-Vac"), a new DNA-collection method that was not available when DNA testing had previously been conducted in the case.[2] By 2021, no additional DNA testing had been conducted, and Keith Chrestman was appointed to replace Ellington as the prosecutor for the Second Judicial District. Chrestman informed Echols that Echols would have to petition the court for permission in order to move forward with the DNA testing, but he assured Echols that he had asked the West Memphis Police Department ("WMPD") to catalogue the remaining evidence in the case. In 2021, Echols filed a lawsuit against the WMPD under the Arkansas Freedom of Information Act after he had learned that certain key evidence in the case might have been lost or destroyed. The ligatures used to bind the victims were ultimately located at the WMPD.

---

[2]According to an article in the Journal of Forensic Sciences, "[t]he wet-vacuum-based collection system is designed for recovering DNA from porous substrates. The system consists of a vacuum, a hand-held collection device, a sample collection bottle, and sterile solution. It functions by dispensing the sterile solution onto a substrate while simultaneously vacuuming cellular material into the sample collection bottle. The liquid contents of the bottle are then filtered through a 0.45 μM polyethersulfone (PES) membrane in a two-stage filter unit, which traps and concentrates cellular material on the filter. Lastly, the filter is cut from the unit and processed for DNA extraction using common procedures." Jessica M. McLamb, M.S., Lara D. Adams, M.S. & Mark F. Kavlick, Ph.D., *Comparison of the M-Vac® Wet-Vacuum-Based Collection Method to a Wet-Swabbing Method for DNA Recovery on Diluted Bloodstained Substrates*, 65 J. Forensic Scis. 1828 (2020).

On January 24, 2022, Echols filed a petition to conduct additional DNA testing under Act 1780 of 2001, as amended by Act 2250 of 2005 and codified at Arkansas Code Annotated sections 16-112-201 to –208 (Repl. 2016) (hereinafter referred to collectively as "Act 1780"). Specifically, Echols sought further forensic DNA testing of the ligatures using the new M–Vac DNA-collection technology. Echols stated that the ligatures had yielded important biological material in prior rounds of DNA testing and that this new technology could collect subsurface DNA—which would not belong to Echols—that might serve to identify the true perpetrator(s) in the case. The State responded, in pertinent part, that Echols was not entitled to relief under Act 1780 because his petition was for a writ of habeas corpus, and when the State has no one in custody to bring to court, habeas corpus is not an available remedy. Echols responded that the plain language of Arkansas Code Annotated section 16-112-202 provides that a person convicted of a crime may make a motion for the performance of forensic DNA testing, or other tests that may become available through advances in technology, to demonstrate the person's actual innocence. *See* Ark. Code Ann. § 16-112-202. Therefore, Echols argued, the legislature worded the statute so that one's ability to make a motion is triggered by being convicted of a crime as opposed to being in State custody.

On June 23, 2022, the circuit court held a hearing on Echols's Act 1780 petition. The circuit court framed the issue for the parties as follows: "[f]irst being, this is a Habeas Corpus Statute. Habeas Corpus literally means, 'Bring the Prisoner Forth.' Can an individual who is lawfully at liberty claim relief under a Habeas Corpus Statute, is the first hurdle that needs to be cleared." The circuit court reasoned that Arkansas Code Annotated sections 16-112-201 through –208 involve habeas corpus relief because those statutes are codified in "Title 16, Practice, Procedure, and Courts; Subtitle 7, Particular Proceedings and Remedies; Chapter 112,

Habeas Corpus." Echols argued that the statutes carve out an actual-innocence exception to traditional habeas corpus relief that allows a person convicted of a crime the opportunity to exonerate himself and that DNA evidence had been uncovered in the past that suggested someone else was likely responsible for the murders in this case. Echols explained that he was not asking for release in accordance with common law or traditional habeas corpus; rather, he was seeking additional DNA testing under the exception set forth in sections 16–112–201 through -208. The State responded that the legislature had intended sections 16–112–201 through -208 to be a form of habeas corpus relief and that this court has said that habeas corpus relief is not available to a person, such as Echols, that is not in State custody. The circuit court orally denied Echols's petition at the conclusion of the hearing, reasoning that "all of this falls under Habeas. This court cannot carve out an exception that does not lawfully and legally exist." The circuit court further explained that habeas relief is intended for those who are not at liberty and "the case law leads to this conclusion."

On June 28, 2022, the circuit court entered a written order denying Echols's Act 1780 petition. The circuit court reasoned that

> [o]ur General Assembly did not make scientific testing based on new technology an independent form of post-conviction relief. Instead, the legislature amended statutory law to make scientific testing based on new technology a form of habeas corpus relief. Ark. Code Ann. §§ 16-112-101-16-112-208 (codifying Act 1780 of 2001, §§ 3-9; Act 2250 of 2005, §§ 2-4).

When a petitioner is not in custody, the circuit court does not have jurisdiction to grant habeas corpus relief. *Curtis v. Hobbs*, 2015 Ark. 127, at 1; *Branning v. Harmon*, 2009 Ark. 533, at 2.

The Court finds that [Echols] is not in custody. So the Court has no jurisdiction to grant him habeas corpus relief. Therefore, the Court must deny his Act 1780 habeas corpus request.

5

This timely appeal followed.

## II. *Points on Appeal*

## A. Preliminary Issues

Before we turn to the merits of Echols's appeal, we take the opportunity to address three procedural arguments raised by the State.

### 1. *Subject-matter jurisdiction*

We must first address the threshold issue of subject-matter jurisdiction. The State argues that the circuit court lacked subject-matter jurisdiction over Echols's petition, and as a result, this court now lacks jurisdiction over this appeal. The State contends that Echols filed his petition in the Crittenden County Circuit Court and the petition should therefore be dismissed because, under Arkansas Code Annotated section 16-112-201(a), Echols was required to file the petition in the Craighead County Circuit Court, the court in which the conviction was entered. On February 21, 2023, the State filed a motion to dismiss on these same jurisdictional grounds. On April 6, we unanimously denied the motion, and upon a review of the entire record, we are not persuaded to reconsider this ruling. *See Echols v. State*, No. CR-22-670 (Ark. Apr. 6, 2023) (motion to dismiss denied).

### 2. *Alford plea*

Next, the State contends, for the first time on appeal, that Echols is not entitled to relief under Act 1780 because he pleaded guilty to the murders.[3] Specifically, the State argues that a petitioner seeking DNA testing pursuant to Act 1780 must present a prima facie case establishing

---

[3]The State acknowledges that it did not raise this argument below but nevertheless urges us to affirm on this basis. *See Foust v. Montez-Torres*, 2015 Ark. 66, at 6, 456 S.W.3d 736, 739 (explaining that we may affirm for any reason that has been developed in the record).

6

that identity was an issue at trial. The State asserts that when a defendant enters a plea of guilty, even by way of an *Alford* plea, he admits to the commission of the charged offenses and identity is therefore no longer in question for purposes of the Act. Echols responds that an *Alford* plea is not an admission of guilt sufficient to negate the issue of identity because such a plea is predicated on the fact that the defendant expressly maintains his innocence in connection with the charged offenses.

Act 1780 provides that a writ of habeas corpus may be issued on the basis of new scientific evidence proving a person actually innocent of the offense for which he was convicted. Ark. Code Ann. § 16–112–201; *see also McArty v. State*, 2020 Ark. 68, at 3, 594 S.W.3d 54, 57. Arkansas Code Annotated section 16–112–202 states that, in order to file a motion for testing that may qualify for relief under Act 1780, a petitioner who requests relief and who seeks scientific testing to provide the basis for that relief must meet specific criteria set out in the statute and demonstrate in his or her motion that these predicate requirements have been met. *McArty*, 2020 Ark. 68, at 4, 594 S.W.3d at 57. Relevant here, a petitioner seeking testing under Act 1780 must present a prima facie case that identity was an issue at trial. Ark. Code Ann. § 16–112–202(7); *see also Leach v. State*, 2019 Ark. 238, 580 S.W.3d 871. When a defendant enters a plea of guilty, the guilty plea is the trial. *Id*. We have held that, by entering a plea of guilty, a defendant admits that he committed the offense and identity is therefore not in question. *Id*.

Whether entering an *Alford* plea precludes a defendant from later challenging the judgment on the grounds of actual innocence pursuant to Act 1780 is an issue that this court left open in *Davis v. State*, 366 Ark. 401, 235 S.W.3d 902 (2006) (per curiam) (holding that because appellant's petition did not meet the requirements of the Act, this court need not reach the issue of whether entering an *Alford* plea affords a defendant the opportunity to later challenge

7

the judgment on the grounds of actual innocence). In *Alford*, *supra*, the United States Supreme Court explained that "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37. Thus, under *Alford*, a court may accept a guilty plea from a defendant who maintains his innocence, provided the court finds an adequate factual basis for the plea of guilty. *Martin v. State*, 2015 Ark. 147, at 3, 460 S.W.3d 289, 292. We have observed that "[t]ypically, a criminal defendant will utilize an *Alford* plea when he 'intelligently concludes that his interests require entry of a guilty plea' in light of strong evidence of actual guilt with the intention of limiting the penalty to be imposed." *Id.* (quoting *Alford*, 400 U.S. at 37–38) (internal citations omitted).

Therefore, unlike a traditional guilty plea, an admission of guilt is not inherent in an *Alford* plea. As such, we disagree with the State that Echols's *Alford* plea precluded him from later challenging his conviction on the grounds of actual innocence pursuant to Act 1780, because such a plea does not negate the issue of identity for purposes of the Act. Accordingly, we decline the State's invitation to affirm the circuit court on this basis.

### 3. *Verification of petition*

Finally, the State contends, also for the first time on appeal, that we should affirm the circuit court on the grounds that Echols's Act 1780 petition does not contain any sort of verification or supporting affidavit.

A person convicted of a crime may file a petition under Act 1780 if he or she makes the necessary claims "under penalty of perjury." *See* Ark. Code Ann. § 16-112-201(a). Section 16-

8

112-203, which sets forth the necessary contents of the petition states that "[t]he petition shall be: (1) Verified by the petitioner *or* signed by the petitioner's attorney[.]" Ark. Code Ann. § 16-112-203(c)(1) (emphasis added). Thus, the general requirement that the petitioner must make the necessary claims under penalty of perjury may be satisfied either with verification by the petitioner or the signature of the petitioner's attorney. Here, Echols's attorney signed the petition. Therefore, we likewise decline to affirm the circuit court's order on this basis.

## B. Plain Language of Act 1780

Having determined that this case is properly before us, we turn to Echols's arguments on appeal. First, Echols contends that the circuit court misinterpreted the plain and unambiguous language of Act 1780, which identifies who is jurisdictionally entitled to make a motion for relief under that Act. This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *McArty*, 2020 Ark. 68, at 2, 594 S.W.3d at 56. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*

> Arkansas Code Annotated section 16-112-103 provides, in pertinent part, that
>
> (a)(1) The writ of habeas corpus shall be granted . . . to any person who shall apply for the writ by petition showing, by affidavit or other evidence, probable cause to believe he or she is detained without lawful authority, is imprisoned when by law he or she is entitled to bail, or who has alleged actual innocence of the offense or offenses for which the person was convicted.
>
> > (2) The procedures for persons who allege actual innocence shall be in accordance with § 16-112-201 et seq.

Ark. Code Ann. § 16-112-103(a)(1)−(2) (Repl. 2016).

9

As discussed above, Act 1780 provides that a writ of habeas corpus may be issued on the basis of new scientific evidence proving a person actually innocent of the offense for which he was convicted. Ark. Code Ann. § 16-112-201; *see also McArty*, 2020 Ark. 68, at 3, 594 S.W.3d at 57. Section 16-112-201 provides that

> (a) Except when direct appeal is available, a person convicted of a crime may commence a proceeding to secure relief by filing a petition in the court in which the conviction was entered to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate, if the person claims under penalty of perjury that:
>
> (1) Scientific evidence not available at trial establishes the petitioner's actual innocence; or
>
> (2) The scientific predicate for the claim could not have been previously discovered through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would find the petitioner guilty of the underlying offense.

Ark. Code Ann. § 16-112-201(a)(1)–(2).

Section 16-112-202, which sets forth the requirements for the form of the petition, similarly provides that, "[e]xcept when direct appeal is available, a person convicted of a crime may make a motion for the performance of fingerprinting, forensic deoxyribonucleic acid (DNA) testing, or other tests which may become available through advances in technology to demonstrate the person's actual innocence" if certain criteria are met. Ark. Code Ann. § 16-112-202.

Echols argues that the plain language found in Act 1780 expressly allows a person convicted of a crime to petition for the performance of additional DNA testing that may become available through advances in technology to demonstrate the person's actual innocence. Echols contends that he is "a person convicted of a crime" within the meaning of sections 16-

112-201 and –202 and that the circuit court was without authority to rewrite the statutes to provide relief only to those petitioners who are in prison. The State omits discussion of the plain language at issue, arguing instead that the legislature consciously legislated against the backdrop of the habeas framework when enacting these postconviction DNA-testing procedures and that habeas relief has always been limited to those petitioners who are in State custody.

We review issues involving statutory construction de novo, as it is for this court to decide the meaning of a statute. *Magness v. State*, 2012 Ark. 16, at 3, 386 S.W.3d 390, 393. When reviewing issues of statutory interpretation, the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. at 3–4, 386 S.W.3d at 393. When the language is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. *Treat v. State*, 2019 Ark. 326, at 5, 588 S.W.3d 10, 13. A statute is ambiguous only when it is open to two or more constructions, or when it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Magness*, 2012 Ark. 16, at 3, 386 S.W.3d at 393. When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; that intent must be gathered from the plain meaning of the language used. *Id*. at 4, 386 S.W.3d at 393. This court will not interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id*. If possible, we construe statutes relating to the same subject matter together and in harmony. *Id*. Furthermore, we will not read into a statute language that was not included by the legislature. *Ark. Dep't of Corr. v. Shults*, 2018 Ark. 94, at 4–5, 541 S.W.3d 410, 412.

Here, the plain language in sections 16-112-201 and -202 unambiguously permits "a person convicted of a crime" to petition for additional DNA testing to demonstrate the person's actual innocence pursuant to Act 1780. This language imposes no requirement that a petitioner must be in State custody to seek relief pursuant to Act 1780, and we decline to read such a requirement into the statutes. The circuit court and the State employ reasoning that hinges on the legislative history and purpose underlying Act 1780 and our common-law interpretations of traditional habeas relief; however, resorting to these tools of statutory construction is unnecessary in the present case given the clear language of Act 1780.[4] It is undisputed that Echols has been convicted of a crime, and as a result, he is entitled to seek relief pursuant to Act 1780. This reading of the plain language of sections 16-112-201 and -202 is consistent with the plain language of section 16-112-103, as it is clear that "*any* person . . . who has alleged actual innocence of the offense or offenses for which the person was convicted" is entitled to petition for a writ of habeas corpus. *See* Ark. Code Ann. § 16-112-103(a)(1). Moreover, section 16-112-103(a)(2) directs such a person to pursue a writ on this basis in accordance with the procedures set forth in "§ 16-112-201 et seq.[,]" a separate subchapter that codified Act 1780.

---

[4]Absent from the dissenting opinion is any regard for the plain language of Arkansas Code Annotated sections 16-112-201 and -202 despite the fact that the language is clear. We have explained that "[t]he courts have no power to legislate or to construe a statute to mean anything other than what it says, if it is plain and unambiguous." *Burrell v. State*, 203 Ark. 1124, 1132, 160 S.W.2d 218, 221 (1942) (quoting *Johnson v. Lowman*, 193 Ark. 8, 975 S.W.2d 86 (1936)). Undeterred by this longstanding precedent, the dissent looks beyond the plain language to the history and purpose underlying traditional habeas corpus relief, as well as the legislative history of Act 1780 as it relates to Illinois law, in support of its position that "the majority has decided to reimagine habeas relief as encompassing any 'person convicted of a crime' whether or not they be in State custody." To the contrary, it was the legislature that elected to permit persons convicted of a crime to seek relief under Act 1780. *See* Ark. Code Ann. §§ 16-112-103(a)(1); 16-112-201(a); and 16-112-202. The legislature imposed no threshold requirement that a person must be in State custody to seek this relief, and we decline to read such a requirement into the statutes.

Therefore, we conclude that the circuit court misinterpreted the plain language of Act 1780 and, as a result, clearly erred when it dismissed Echols's Act 1780 petition on the grounds that he was not in State custody at the time it was filed. Accordingly, we reverse and remand.

Having found that the circuit court's erroneous interpretation and application of the plain and unambiguous language of Act 1780 warrants reversal, we need not consider Echols's alternative argument on appeal that the circuit court erred in failing to apply established principles of statutory interpretation to accurately determine the meaning of the language in the Act.

Reversed and remanded.

Special Justice MARY CAROLE YOUNG joins in this opinion.

WOMACK and WEBB, JJ., and Special Justice MARCIA HEARNSBERGER dissent.

KEMP, C.J., and HILAND, J., not participating.

**BARBARA W. WEBB, Justice, dissenting.** The majority's decision obliterates any sense of finality in our criminal justice system. Their interpretation of Act 1780 means anyone who has ever been convicted of a crime—whether or not they be in State custody—can seek DNA or other scientific testing even if such testing would not prove that individual's innocence. That is the case here. Echols's first conviction did not rely on DNA evidence. Rather, the jury was presented with evidence that Echols knew facts about the case that were not public knowledge; fibers found on the victims' clothes were microscopically similar to clothing found in Echols's home; multiple witnesses testified that Echols confessed to the murders; and multiple witnesses placed him near the crime scene at the time of the murders. DNA testing therefore cannot prove Echols's innocence. For the reasons set forth below, I would hold that the circuit court correctly found that Echols is not entitled to habeas relief. I dissent.

I. *Habeas Corpus*

The writ of habeas corpus is a foundational principle of Arkansas law dating back to statehood itself. Recognizing the importance that a mechanism exist to free the unlawfully detained, our founders included the writ in the Arkansas Constitution of 1836. *See* Ark. Const. of 1836, art. II, § 16. From the outset, our court recognized that the writ could issue only for a petitioner in State custody. *See Kittrel ex parte*, 20 Ark. 499, 505 (1859) (noting that the writ of habeas corpus may issue in favor of any person committed to prison). When our current constitution was adopted in 1874, the writ was again included in the declaration of rights. Ark. Const. art. 2, § 11. But a new constitution did not change this court's view on the custody requirement, as it reaffirmed that the "object of the writ [of habeas corpus] is the liberation of those who may be imprisoned without sufficient cause, and to deliver them from unlawful custody." *State ex rel. Ark. Indus. v. Neel*, 48 Ark. 283, 289, 3 S.W. 631, 633 (1887).

The enabling legislation for the writ is found at Arkansas Code Annotated sections 16-112-101 et seq. Relief under our habeas statutes was traditionally limited to instances in which a prisoner's commitment was invalid on its face, or the committing court lacked jurisdiction. *E.g.*, *Mackey v. Lockhart*, 307 Ark. 321, 819 S.W.2d 70 (1991). However, in 2001, the General Assembly adopted Act 1780, which expanded habeas relief to allow for scientific testing to establish the actual innocence of a wrongly convicted person. Ark. Code Ann. § 16-112-201.

Although Act 1780 expanded the scope of habeas relief, it did not alter this court's jurisprudence. For example, in *Neely v. McCastlain*, we affirmed the circuit court's denial of Neely's habeas petition, noting that the fact that he was not in custody was dispositive. 2009 Ark. 189, at 6, 306 S.W.3d 424, 428. And in *Green v. Kelley*, we reiterated that "[t]he purpose of a writ of habeas corpus is to remedy a detention of an illegal period of time." 2019 Ark. 317,

14

at 2. We presume the General Assembly is familiar with this court's interpretation of its statutes, and if it disagrees, it can amend the statutes. *Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16. Without such amendments, however, our interpretations of the habeas statutes remain the law. *See McCutchen v. City of Fort Smith*, 2012 Ark. 452, 425 S.W.3d 671.

Legislative history reinforces the conclusion that there remains a custody requirement––even for actual-innocence claims. Act 1780 was largely modeled after the Illinois DNA testing law, which was created as a separate form of postconviction relief. *Johnson v. State*, 356 Ark. 534, 544, 157 S.W.3d 151, 160 (2004); *see also* 725 Ill. Comp. Stat. 5/116-3 (West, Westlaw through P.A. 103-585 of the 2024 Reg. Sess.). Illinois courts have found that section 116-3 does not require that a petitioner be incarcerated in order to seek forensic testing. *People v. Savory*, 756 N.E.2d 804, 810 (Ill. 2001). Meanwhile, the Illinois habeas statute expressly requires that a petitioner be in custody to obtain relief. 735 Ill. Comp. Stat. 5/10-102 (West, Westlaw through P.A. 103-585 of the 2024 Reg. Sess.). Presumably aware of these details, the General Assembly nevertheless chose to establish DNA testing as a habeas claim, knowing full well this court's longstanding view that the writ may only issue to release those held in custody.

Despite a common understanding of the writ that dates back nearly two hundred years, the majority has decided to reimagine habeas relief as encompassing any "person convicted of a crime" whether or not they be in State custody. This opens the doors for thousands of individuals to file Act 1780 petitions, inundating our courts and exposing the State to significant financial strain if it is to pay for scientific testing for any person ever convicted of a crime. This absurd outcome is the result of the majority's myopic thinking, which disregards any broader context. As it is undisputed that Echols is no longer in custody, he is simply not entitled to petition for a writ of habeas corpus.

15

## II.  *Guilty Plea*

An inmate who brings a petition for a writ of habeas corpus under Act 1780 must present a prima facie case that identity was an issue at trial before a circuit court can order scientific testing. Ark. Code Ann. § 16-112-202(7). However, when a defendant enters a plea of guilty, the plea is the trial, and he admits that he committed the offense. *Graham v. State*, 358 Ark. 296, 298, 188 S.W.3d 893, 895–96 (2004). Identity is thus not in question. *Id.* For this reason, a challenge to a guilty plea is not cognizable in Act 1780 proceedings, even in those instances where the inmate alleges that new scientific evidence is available. *Barton v. State*, 2014 Ark. 418, at 2 n.1.

In this case, Echols was convicted of capital murder and sentenced to death for his role in the brutal murders of three eight-year-old boys in West Memphis. This court affirmed on direct appeal. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996). The circuit court subsequently entered an order for a new trial so that Echols could enter a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). The plea was therefore the trial for the purposes of Echols's present Act 1780 petition. Consequently, Echols is foreclosed from seeking habeas relief under our clear precedent.

The majority, however, finds that Echols may still challenge his conviction on the basis of identity because his *Alford* plea allowed him to maintain his innocence. Yet if Echols wished to contest identity, he could have proceeded to trial. But, as the plea-hearing transcript reveals, he knowingly and intelligently waived that right, acknowledging that it was in his best interest to avoid trial. By entering an *Alford* plea, Echols limited the penalty imposed in light of the strong evidence of his guilt. *Davis v. State*, 366 Ark. 401, 402 n.1, 235 S.W.3d 902, 903 n.1

(2006). Whether Echols maintains his innocence is immaterial because he accepted the State's case against him. This should have concluded the case.[1]

Permitting Echols to pursue habeas relief allows him to have the best of both worlds, as he was able to limit his penalty and yet still challenge the foundation of his conviction. The majority sends a clear message to prosecutors and trial judges: there is no incentive to offer or accept an *Alford* plea, as the judgment remains open to collateral attack.

III.  *Actual Innocence*

Even if we bypass the threshold problems with Echols's petition, he still is not entitled to DNA testing. Act 1780 does not permit testing of evidence based on a mere assertion of innocence or the theoretical possibility that additional testing might alter the outcome of a trial; the statute was "not meant to do away with finality in judgments." *Martin v. State*, 2018 Ark. 176, at 3, 545 S.W.3d 763, 765. Rather, the petitioner must identify how the requested testing "would establish the actual innocence of the person in relation to the offense being challenged." Ark. Code Ann. § 16-112-202(6)(B).

Here, additional DNA testing would not prove Echols's innocence. Importantly, Echols's first conviction did not rest on DNA evidence, and no such evidence was presented at a subsequent trial because he chose to enter a guilty plea. The jury was presented with evidence that Echols knew facts about the case that were not public knowledge; fibers found on the victims' clothes were microscopically similar to clothing found in Echols's home; multiple witnesses testified that Echols confessed to the murders; and multiple witnesses placed him near

---

[1]I note that Echols's counsel represented to the circuit court that its acceptance of the guilty plea would end proceedings in this matter.

17

the crime scene at the time of the murders. Given this evidence, testing the ligatures for another person's DNA would not prove Echols's innocence.

In sum, Echols is not entitled to habeas relief for three reasons: (1) the writ cannot issue because he is not in State custody; (2) his guilty plea constituted his trial, and his conviction is not subject to collateral attack; and (3) DNA testing would not prove his innocence. I would affirm the circuit court's order denying Echols's Act 1780 petition. In reaching its decision, the majority ignores common sense and basic legal principles to embark on a fruitless endeavor to exonerate a depraved murderer. Their decision only serves to reopen old wounds for the victims' families and the West Memphis community.

I dissent.

WOMACK, J., and Special Justice MARCIA HEARNSBERGER join.

*Conner & Winters, LLP*, by: *John R. Elrod* and *Kerri E. Kobbeman*; *Law Offices of Patrick J. Benca*, by: *Patrick J. Benca*; and *Bracewell, LLP*, by: *Stephen L. Braga*, of counsel, for appellant.

*Tim Griffin*, Att'y Gen., by: *Nicholas J. Bronni*, Solicitor Gen.; *Dylan L. Jacobs*, Deputy Solicitor Gen.; and *Brooke Jackson Gasaway*, Ass't Att'y Gen., for apellee.